**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

MELISSA ILENE WILLIAMS,

    Movant,

vs.

UNITED STATES OF AMERICA.

No. 15-CV-96-LRR
No. 14-CR-25-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*     *INTRODUCTION AND PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . *1*

*II.*    *EVIDENTIARY HEARING* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
      *A.*      *The Discovery Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
      *B.*      *The 2255 Motion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
           *1.*     *Means of identification enhancement* . . . . . . . . . . . . . . *5*
           *2.*     *Loss calculation* . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
           *3.*     *Restitution* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*IV.*   *CERTIFICATE OF APPEALABILITY* . . . . . . . . . . . . . . . . . . . . . . . . *15*

*V.*     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

*I. INTRODUCTION AND PROCEDURAL HISTORY*

The matters before the court are Melissa Ilene Williams's ("movant") "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence" ("2255 Motion") (civil docket no. 1) and "Motion for Discovery" ("Discovery Motion") (civil docket no. 7) (collectively, "Motions"). On September 22, 2015, the movant filed the 2255 Motion. On January 4, 2016, the movant's defense counsel in the underlying criminal case filed an

affidavit in response to the 2255 Motion. *See* Counsel Affidavit (civil docket no. 3). On February 5, 2016, the government filed a "Brief in Response to Movant's Petition Under 28 U.S.C. § 2255" ("2255 Resistance") (civil docket no. 6). On February 8, 2016, the movant filed the Discovery Motion. On February 22, 2016, the government filed a "Resistance to Movant's Motion for Discovery" ("Discovery Resistance") (civil docket no. 8). On March 11, 2016, the movant filed a Reply in support of the 2255 Motion (civil docket no. 11). The Motions are fully submitted and ready for decision.[1]

## II. EVIDENTIARY HEARING

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *See United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. *See Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996). Accordingly, a district court may summarily dismiss a motion brought under 28 U.S.C. § 2255 without an evidentiary hearing "if (1) the . . . allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (citations omitted); *see also Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); *United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (stating

---

[1] The movant disputes that the matter is ready for decision. *See* Statement to the Court (civil docket no. 13). The movant argues that the matter is not ready for decision because the Discovery Motion remains pending. *Id.* However, because the court addresses the Discovery Motion herein, the court concludes that the matter is, in fact, ready for decision.

that no evidentiary hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). Stated differently, the court can dismiss a 28 U.S.C. § 2255 motion without a hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995) (per curiam).

The court concludes that it is able to resolve the movant's claims from the record. *See Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (holding that "[a]ll of the information that the court needed to make its decision with regard to [the movant's] claims was included in the record" and, therefore, the court "was not required to hold an evidentiary hearing" (citing Rule Governing Section 2255 Proceedings 8(a) and *United States v. Raddatz*, 447 U.S. 667, 674 (1980))); *see also Premachandra v. United States*, 101 F.3d 68, 70 (8th Cir. 1996) (concluding that the district court did not err in denying an evidentiary hearing because "the record contain[ed] no response to counsel's affidavit and no fact submission . . . suggesting a need for an evidentiary hearing"). The evidence of record conclusively demonstrates that the movant is not entitled to the relief sought. Specifically, it indicates that the movant's assertions fail because counsel represented the movant in a manner that comports with the requirements of the Sixth Amendment. As such, the court finds no need for an evidentiary hearing, and the court denies the movant's request for an evidentiary hearing.

### III. ANALYSIS

#### A. The Discovery Motion

"A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law." Rule 6(a), Rules Governing Section 2255 Proceedings for the United States District Courts. In order to establish "good cause," the movant must

demonstrate that the record, supplemented by the discovery requested, may entitle the movant to relief. *See Dyer v. United States*, 23 F.3d 1421, 1424 (8th Cir. 1994) ("We find no abuse of discretion in the district court's denial of [the movant's] motions for discovery because [the movant] did not show how the evidence he sought would establish his innocence."); *see also United States v. Fields*, 761 F.3d 443, 478 (5th Cir. 2014) ("A petitioner demonstrates 'good cause' under Rule 6(a) 'where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief.'" (quoting *Bracy v. Gramley*, 520 U.S. 899, 904 (1997))); *Cassidy v. United States*, 304 F. Supp. 864, 867 (E.D. Mo. 1969) (noting that there was no need to authorize discovery where "[n]o errors ha[d] been alleged which the requested documents are said to support"). In the Discovery Motion, the movant argues that the government's "discovery file" from the underlying criminal case and "all written correspondence between [the movant's] prior counsel and the United States Attorney's [O]ffice regarding the [movant's] case" should be discoverable. *See* Discovery Motion at 2. The movant argues that good cause exists because she requires such materials to respond to the government's arguments in the 2255 Resistance. *Id*.

The court finds that the movant has not demonstrated the requisite "good cause" to conduct discovery. The record before the court is adequate to evaluate the effectiveness of counsel prior to and at the sentencing hearing. The court has several iterations of the plea agreement from the underlying criminal case, an affidavit from the movant's counsel, the transcript from the sentencing hearing and other relevant documents available for review in determining whether counsel was ineffective. The court finds that any relief, if appropriate, can be determined based on the record currently before the court and that the discovery requested, if produced, would not entitle the movant to relief. Accordingly, the court shall deny the Discovery Motion.

### B. *The 2255 Motion*

The movant asserts three bases for relief in support of the 2255 Motion. In particular, the movant argues that: (1) counsel was ineffective for failing to object to a two-level sentencing enhancement for the use of means of identification to produce or obtain any other means of identification; (2) counsel was ineffective for failing to properly calculate and challenge the amount of loss, impacting the movant's offense level; and (3) counsel was ineffective for failing to properly calculate the amount of restitution.

The court concludes that counsel's conduct fell within a wide range of reasonable professional assistance, *Strickland v. Washington*, 466 U.S. 668, 689 (1984), and counsel's performance did not prejudice the movant's defense, *id*. at 693-94. Thus, the movant has failed to establish an ineffective assistance of counsel claim. *See id.* at 687 (holding that, to establish an ineffective assistance of counsel claim, the movant must first "show that counsel's performance was deficient" and then "show that the deficient performance prejudiced the defense"); *see also Morelos v. United States*, 709 F.3d 1246, 1249-50 (8th Cir. 2013) ("To succeed on a claim of ineffective assistance of trial counsel, a defendant must prove 1) [the defendant's] attorney's performance was . . . deficient . . ., and 2) [the defendant] suffered such prejudice stemming from the deficient performance there is a reasonable probability the proceeding would have had a different result." (citing *United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001))). In sum, the alleged errors that the movant asserts do not warrant relief under 28 U.S.C. § 2255. The movant's claims are without merit. For the reasons discussed below, the court shall deny the movant's 28 U.S.C. § 2255 motion.

### 1. *Means of identification enhancement*

The movant argues that counsel was ineffective for failing to object to a two-level enhancement for the use of a means of identification to produce or obtain another means of identification. Brief in Support of the 2255 Motion (civil docket no. 1-1) at 8-9. In

particular, the movant argues that her use of a means of identification was to obtain commissions on fraudulent life insurance policies, not other means of identification. *Id.* at 9. The government argues that the "other means of identification" obtained by the movant was not the commission she received from the fraudulent policy, but rather the policy itself. 2255 Resistance at 10-11. The government argues that insurance policies are similar to bank loan account numbers and credit cards, which the United States Sentencing Guidelines cite as examples of when the enhancement applies. *Id.* at 11 (citing USSG § 2B1.1, comment. (n.10(C)(ii))). The government further argues that counsel's decision not to object to this enhancement was reasonable because counsel obtained significant concessions from the government at sentencing and, had counsel objected to the use of means of identification enhancement, the movant risked losing the three-level reduction for acceptance of responsibility. *Id.* at 12. In response, the movant argues that there is no evidence that the policies issued "contain[ed] any identifying number" for the enhancement to apply. Reply at 3.

USSG § 2B1.1(b)(11)(C)(i) provides for a two-level sentencing enhancement if the offense involved "the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." The Sentencing Guidelines application notes provide examples of when the enhancement applies and when it does not. For instance, the enhancement applies when "[a] defendant obtains an individual's name and social security number from a source . . . and obtains a bank loan in that individual's name." USSG § 2B1.1, comment. (n.10(C)). It also applies when "[a] defendant obtains an individual's name and address from a source . . . and applies for, obtains, and subsequently uses a credit card in that individual's name." *Id.* However, if "[a] defendant uses a credit card from a stolen wallet only to make a purchase" or if "[a] defendant forges another individual's signature to cash a stolen check," the enhancement should not apply. *Id.*

6

To demonstrate that counsel's performance was deficient, the movant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Considering an attorney's performance, [the court] 'must indulge a strong presumption' that the conduct was reasonable, and 'the [movant] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 689). The court "consider[s] strategic decisions to be virtually unchallengeable unless they are based on deficient investigation, in which case the 'presumption of sound trial strategy . . . founders on the rocks of ignorance.'" *Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006) (quoting *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005)).

Here, the movant has not met her heavy burden of demonstrating that counsel's performance was deficient. Despite the movant's assertion that there was "no factual or legal basis . . . [for] imposing the 'means of identification' adjustment," Reply at 6, counsel reasonably could have concluded that the enhancement did, in fact, apply. The life insurance policies the movant obtained through her fraudulent scheme are more similar to obtaining bank loans or credit cards than making purchases with a stolen credit card or forging an individual's signature on a stolen check. The Sixth Circuit Court of Appeals explained the distinction as differentiating between schemes where the defendant obtains new lines of credit, wherein the enhancement would apply, and schemes where the defendant wrongfully uses existing lines of credit or accounts. *See United States v. Williams*, 355 F.3d 893, 900 (6th Cir. 2003).[2] The Guidelines describe the conduct encompassed by the enhancement as the "breeding" of means of identification. USSG

---

[2] *Williams* cites USSG § 2B1.1(b)(9)(C)(i). However, that provision has since been moved to § 2B1.1(b)(11)(C)(i). The provision and application notes discussed in *Williams* are substantively identical to the provision applied to the movant at sentencing.

§ 2B1.1, comment. (backg'd.); *see also United States v. Craig*, 343 F. App'x 766, 770-71 (3d Cir. 2009) (unpublished decision) (finding that a defendant's use of his grandmother's credit card to create an e-Bay account warranted application of the means of identification enhancement because the defendant used the credit card to "breed" the e-Bay account). Here, the movant generated new insurance policies by wrongfully using actual persons' means of identification. This is more similar to obtaining new lines of credit than fraudulently using existing lines of credit because it "breeds" a new insurance policy. Regardless of whether the government produced the policies along with specific identifying numbers, counsel was not unreasonable in failing to object on this basis. It is common knowledge that insurance policies are generally issued with policy numbers and counsel's failure to object on the basis that the government did not specifically provide her with the policy numbers was not objectively unreasonable.

Furthermore, the record demonstrates that counsel secured significant charging concessions from the government before the movant pleaded guilty. Despite the movant's insistence that it is necessary to consult the communications between counsel and the government regarding the charging concessions, the record clearly demonstrates that such concessions were made. On June 6, 2013, prior to charging the movant, the government communicated a Proposed Information (civil docket no. 3-3) to pre-charging counsel. The Proposed Information includes a Count 2, which charges the movant with the "knowing[] use, without lawful authority, [of] a means of identification of another person. Specifically, [the movant] knowingly used the name of J.S. who [the movant] knew to be an actual person" in violation of 18 U.S.C. § 1028A(a)(1). Proposed Information at 2-3. The government also communicated a Proposed Plea Agreement (civil docket no. 3-1) to pre-charging counsel.[3] The Proposed Plea Agreement provides for a "guideline sentence

---

[3] Both the Proposed Information and the Proposed Plea Agreement were sent to the
(continued…)

for aggravated identity theft," which "requires a two-year term of incarceration consecutive to any other term of incarceration imposed." Proposed Plea Agreement at 6 (formatting omitted). The final Plea Agreement (civil docket no. 3-2), which is signed by the movant, does not contain a provision regarding aggravated identity theft, and the final Information (criminal docket no. 2) charges the movant only with mail fraud. Finally, at the sentencing hearing, the court questioned the government regarding whether "there would be a basis . . . [for] charging identity theft." Sentencing Transcript (criminal docket no. 36) at 10. The government stated that there was a basis for so charging the movant, that it was "something that was given very careful consideration by the government" and that "it was part of the plea negotiations" with the movant's counsel. *Id*. at 10-11. The government stressed that, while there was a basis for charging the movant with aggravated identity theft, it "was part of the discussion about resolving [the criminal case] preindictment." *Id*. at 11. Counsel also states that she chose not to object to application of this enhancement because she feared "losing the [three]-level reduction . . . for acceptance of responsibility, if the court found . . . [the] issue to be frivolous." Counsel Affidavit at 4.

The court finds that counsel was not deficient when she decided not to object to the use of means enhancement. Counsel could reasonably have believed that the enhancement applied and she secured charging concessions from the government in exchange for stipulating to the enhancement. Additionally, the court notes that the sentence it gave was the correct sentence and is the sentence the movant would have received even had the enhancement not applied. At the sentencing hearing, the court noted the seriousness of the movant's crime and again noted the uncharged criminal conduct. *See* Sentencing

---

[3](…continued)
movant's pre-charging counsel before counsel was appointed. However, this fact does not change the court's analysis.

Transcript at 24-25 (denying the movant's motion for a downward variance based on aggravating factors such as the complexity of the offense, the victimization of the movant's friends and family as well as the uncharged counts of aggravated identity theft). As the court stated at sentencing, the movant "received . . . an enormous charging break." *Id.* at 25. These factors led the court to conclude that the sentence the movant received was fair and correct. Accordingly, the court shall deny the 2255 Motion with respect to the movant's contention that counsel unconstitutionally failed to challenge the use of means enhancement.

### 2. *Loss calculation*

The movant argues that counsel was ineffective for failing to challenge the amount of loss for the offense. *See* Brief in Support of the 2255 Motion at 9-12. The movant received a ten-level increase because the amount of loss stemming from the offense exceeded $120,000 but was less than $200,000. The movant argues that the loss calculation improperly fails to credit the amount the movant paid in premiums to the insurance companies in order to advance her fraudulent scheme. *Id.* at 10. She also argues that the loss amount improperly fails to credit commissions that one of the insurance companies withheld on the movant's legitimately sold policies. *Id.* After crediting these amounts, the movant argues, the correct amount of loss is only $108,997.83. *Id.* at 11. Such amount of loss triggers only an eight-level increase because it is more than $70,000 but less than $120,000. The movant argues that counsel was ineffective for stipulating to a loss calculation in the ten-level range, rather than the eight-level range. *Id.* at 11-12.

The government argues that loss was properly calculated at $181,382.42. *See* 2255 Resistance at 13-18. The government argues that the premiums the movant paid to the insurance companies in furtherance of her fraudulent scheme should not be credited in the loss calculation because they "maintained the fraudulent insurance policy contracts and compensated the insurance companies for the financial risks and other costs associated with

those policies." *Id.* at 14. The government also argues that the movant's legitimate commissions that the insurance companies withheld "should not be subtracted from the loss calculation . . . because [the] movant intended to inflict the full $181,382.42 in pecuniary harm upon the victims." *Id.* at 15. The government notes that, even if one of the figures should have been excluded from the loss calculation, the ten-level enhancement is still appropriate. "Only if the [c]ourt finds both amounts, the paid premiums and withheld commissions, should have been subtracted from the loss amount . . . would the movant have suffered prejudice." *Id.* at 16.

The court finds that counsel was not ineffective in failing to object to the loss amount. The court concludes that the loss amount should not have been reduced by the more than $60,000 in premiums that the movant paid to the insurance companies. The Guidelines permit the court to reduce the loss calculated by the amount of "money returned . . . by the [movant] . . . to the victim before the offense was detected." USSG § 2B1.1 comment. (n.3(E)(i)). However, the court need not reduce the loss calculation by amounts that the movant paid the victim to perpetuate his or her fraudulent scheme. *See United States v. Hatchett*, 622 F.3d 984, 988 (8th Cir. 2010) (affirming the district court's loss calculation where the court refused to credit a defendant's repayment of earlier investors with funds recieved from later investors because the defendant's "subjective intent in making the repayments was to further his scheme"); *see also United States v. Powell*, 576 F.3d 482, 497-98 (7th Cir. 2009) (noting that payments made "to further the fraudulent scheme" need not be excluded from the loss calculation). Here, the movant's payment of the premiums was clearly intended to further her fraudulent scheme. Had she not paid premiums on the fraudulent policies, the victim insurance companies may have grown suspicious or refused to pay her commissions. The movant's clear purpose behind the payment of the premiums was not to return or reimburse the victims for the harm she caused them, but rather to give the appearance of legitimacy and to allow her to collect

further wrongful commissions. Any suggestion by the movant that her "[p]ayment of premiums was a 'service rendered' . . . to the insurance companies" is without merit. Reply at 8. The payment of premiums for the purpose of furthering a fraudulent insurance scheme cannot be said to be a "service rendered" as contemplated by the Guidelines.

The court further finds that the loss calculation should not have been reduced by the approximately $11,000 withheld from the movant's legitimate commissions. The movant herself states that, "[w]hen the offense was discovered by [one of the victim insurance companies], the company recovered some of its own loss when it did not pay commissions owed to [the movant] on legitimately issued policies." Brief in Support of the 2255 Motion at 10. Because the victim only mitigated its losses after it discovered the fraud, the loss calculation need not be reduced by such mitigation. *See* USSG § 2B1.1, comment. (n.3(E)(i)) (stating that the loss calculation should be reduced by the money returned to the victim "before the offense was detected"); *United States v. Markert*, 732 F.3d 920, 932 n.5 (8th Cir. 2013) ("[A] defendant's repayment of funds *after* the discovery of a fraud offense is not relevant to [loss calculation at] sentencing."); *United States v. Rosen*, 409 F.3d 535, 550-51 (2d Cir. 2005) ("The loss estimate may include amounts that have been repaid to victims after discovery of the crime."). Furthermore, where a victim utilizes self-help measures to defray its injury, the court need not reduce the loss calculation by such amount. *See, e.g.*, *United States v. Mayo*, 295 F. Supp. 2d 608, 610 (E.D. Va. 2003) (declining to reduce the loss calculation by the amount of monies a bank seized from an account that the defendant maintained at the bank unrelated to the fraudulent scheme because "attaching funds in other accounts maintained by the offender is a contractual remedy that reduces the defendant's civil liability, but has no bearing on the quantum of money actually taken by the theft"). Finally, as the government argues, the court finds that the withheld commissions were properly included in the loss calculation as "intended loss." Here, the movant intended to collect all of her fraudulent sales commissions. The

fact that the victim insurance company defrayed some of its losses by withholding other commissions does "not diminish her culpability for the underlying fraud." *United States v. Stennis-Williams*, 557 F.3d 927, 929-30 (8th Cir. 2009). Therefore, the court finds that the loss calculation should not have been reduced by either the amount of premiums paid or withheld commissions. Even if one of the amounts at issue should have been credited against the loss calculation, the ten-level increase still applied. Accordingly, counsel was not ineffective in failing to challenge the loss amount.

Finally, as the court has previously noted, the sentence that the movant received was the correct sentence. The court would have given the movant the same sentence regardless of whether the eight-level or ten-level increase applied. Counsel was not ineffective for failing to challenge the loss amount. Counsel states that she did not object to the loss amount because the plea agreement was contingent on the movant's acceptance of the loss calculation and restitution award. Counsel Affidavit at 4. She further states that she did not object to the loss calculation at the sentencing hearing for fear of losing the three-level reduction for acceptance of responsibility. *Id.* at 5. The court finds that, because of counsel's strategic decision not to challenge the loss amount, counsel's performance was not deficient. Furthermore, the movant suffered no prejudice by counsel's failure to object to the loss calculation because the loss calculation was, in fact, correct and the outcome would not have changed even if counsel had objected. Accordingly, the court shall deny the 2255 Motion with respect to the movant's assertion that counsel unconstitutionally failed to contest the loss calculation.

### 3. *Restitution*

The movant argues that counsel was ineffective for failing to object to the restitution amount ordered by the court. *See* Brief in Support of the 2255 Motion at 12-15. Specifically, the movant argues that she should have received "a credit against the restitution amount for the approximately $60,000 in premiums she paid to the victim

13

insurance companies" and further argues that "attorney fees and administrative fees were incorrectly included in the restitution amount." *Id*. at 12. The government argues that "a claim of ineffective assistance of counsel with respect to restitution may not be raised in a § 2255 motion and the amount of restitution was properly calculated . . . ." 2255 Resistance at 19.

The purpose of a motion under 28 U.S.C. § 2255 is to allow "[a] prisoner in custody . . . claiming the right to be released . . . to vacate, set aside or correct" a sentence improperly imposed. 28 U.S.C. § 2255. The Eighth Circuit Court of Appeals has held that "the plain and unambiguous language of the statute . . . precludes a restitution challenge" to the movant's sentence. *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003); *see also United States v. Bania*, 787 F.3d 1168, 1172 (7th Cir. 2015) ("A 28 U.S.C. § 2255 motion, for instance, cannot be used as a vehicle for challenging the restitution component of a sentence. And we have been clear that such motions are no substitute for a direct appeal." (citation omitted)); *Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009) (holding that, even where a challenge to restitution is only one of several cognizable claims, a movant cannot attack the restitution award under § 2255). Where a movant raises a restitution issue in the context of an ineffective assistance of counsel claim, "the analysis remains the same" and "the claim may not be raised in a section 2255 motion." *Shepard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013).

Here, the movant's claim that counsel was ineffective for failing to object to the restitution award is clearly precluded by *Shepard*. Such a claim is not cognizable in a proceeding pursuant to 28 U.S.C. § 2255. Despite the movant's assertion that, in the criminal case, "the Eighth Circuit held that the restitution issue is better addressed in a Section 2255 petition," Reply at 11, the Eighth Circuit declined to address the substantive propriety of the restitution award—the only issue before it was whether counsel was ineffective for failing to object to the restitution amount. *See United States v. Williams*,

588 Fed. App'x 511, 513 (8th Cir. 2014) (unpublished decision) (recognizing that, on direct appeal, the movant "argu[ed] only that her trial counsel rendered ineffective assistance" and declining to address such issue on direct appeal). The movant cites *Gonzales v. United States*, 792 F.3d 232, 238 (2d Cir. 2015), arguing that hers is the "rare" case in which a fine or restitution award imposes such a severe penalty as to amount to "custody," affording relief pursuant to a motion under § 2255. Reply at 12. The Second Circuit Court of Appeals has not "foreclosed the possibility that a restitution order might entail a sufficiently severe restraint on liberty, not shared by the public at large, as to amount to a form of custody." *Kaminski v. United States*, 339 F.3d 84, 87 (2d Cir. 2003). However, the court has found no authority to suggest that the Eighth Circuit endorses such a view and the court declines to adopt it for the first time in the instant action. In any event, the court finds that the restitution ordered in the underlying criminal case was not so great as to amount to a form of custody under *Kaminski*. Accordingly, the court shall deny the 2255 Motion with respect to the movant's assertions regarding restitution.

## IV. CERTIFICATE OF APPEALABILITY

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals." 28 U.S.C. § 2253(c)(1)(B). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000) (per curiam); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedeman*, 122 F.3d at 523.

To make such a showing, the movant must demonstrate that the issues are debatable among reasonable jurists, a court could resolve the issues differently or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, the movant must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that the movant failed to make the requisite "substantial showing" with respect to the claims that she raised in the motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because she does not present a question of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, the court shall deny a certificate of appealability. If the movant desires further review of the motion, she may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

## V. CONCLUSION

The court has thoroughly reviewed the record and finds that the denial of the motion comports with the Constitution, results in no "miscarriage of justice" and is consistent with

the "rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962); *see also United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987))). The movant's claims do not justify relief.

Further, the court appropriately sentenced the movant. The court's application of the advisory sentencing guidelines violates no constitutional right. *See United States v. Villareal-Amarillas*, 562 F.3d 892, 898 (8th Cir. 2009) (observing that a sentencing judge is only constrained by the statutory maximum and minimum for an offense and the factors included in 18 U.S.C. § 3553(a)); *United States v. Garcia-Gonon*, 433 F.3d 587, 593 (8th Cir. 2006) (finding challenges based on the Fifth Amendment and the Sixth Amendment to be unavailing because sentence-enhancing facts need only be found by a preponderance of the evidence and uncharged relevant conduct may be considered so long as the sentence does not exceed the statutory maximum for the offense); *cf. Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013) (requiring facts that increase a mandatory minimum sentence be found beyond a reasonable doubt by the jury).

**IT IS THEREFORE ORDERED**:

(1) The Discovery Motion (civil docket no. 7) is **DENIED**;

(2) The 2255 Motion (civil docket no. 1) is **DENIED**; and

(3) A certificate of appealability is **DENIED**.

**DATED** this 25th day of July, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA